# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**TIANA O.,**

        Plaintiff,

   v.

**KILOLO KIJAKAZI, Acting
Commissioner of Social Security,**

      Defendant.

Civil Action No.
20-cv-2051-MAU

## <u>MEMORANDUM OPINION</u>

Plaintiff Tiana O.[1] ("Plaintiff") filed this case challenging the decision of the Acting Commissioner of Social Security, Dr. Kilolo Kijakazi ("Defendant" or "the Commissioner"),[2] denying Plaintiff's claim for Social Security Disability Insurance ("SSDI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff moves this Court to reverse the Commissioner's decision, or in the alternative, remand to the Social Security Administration ("SSA") for further proceedings. The Commissioner argues that the Administrative Law Judge's ("ALJ") decision should be affirmed.

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), available at https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited August 21, 2023).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted in place of her predecessor. *See* Fed. R. Civ. P. 25(d).

Having reviewed the Administrative Record, the Parties' briefs, and the relevant law, this Court will **GRANT IN PART** and **DENY IN PART** the Parties' motions and remand this case to the SSA for further proceedings consistent with this Memorandum Opinion.

## BACKGROUND

### A.  The Social Security Act

To qualify for disability insurance and/or supplemental security income benefits under the Social Security Act ("the Act"), the Commissioner must find that the claimant has a "disability" as defined in the Act.  *See* 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process for assessing a claimant's alleged disability, with the claimant carrying the burden of proof for establishing his inability to work.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  In the first three steps, the claimant must prove that: (1) he is not "presently engaged in substantial gainful activity"; (2) he has a "medically severe impairment or impairments"; and (3) his impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also* 20 C.F.R. Pt. 404, Subpt. P., App. 1 (2017) ("the Listings") (describing impairments for each of the major body systems considered severe enough to prevent an individual from performing gainful activity, regardless of age, education, or work experience).

 If the claimant cannot satisfy the third step, the inquiry proceeds to steps four and five, where the inquiry takes into "consideration . . .  [the claimant's] 'residual functional capacity.'" *Butler*, 353 F.3d at 997) (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).  A claimant's residual

functional capacity ("RFC") is "what an individual can still do despite his or her limitations."  SSR 96-8p, 1996 WL 374184 (July 2, 1996).  An RFC requires an assessment "of the extent to which an individual's medically determinable impairment(s), including any related symptoms . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  *Id.*

At step four, the claimant must compare the RFC assessment with the physical and mental demands of his past relevant work and demonstrate that his impairments prevent him from performing that work.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy that the claimant can perform in light of his age, education, work experience, and RFC.  *See id.*; *see also Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011).  In making this determination, the ALJ may call upon a vocational expert ("VE") to testify at the administrative hearing.  *Callahan*, 786 F. Supp. 2d. at 90.

**B.  Plaintiff's Disability Claims and Procedural History**

Plaintiff filed applications for DIB and SSI benefits on September 6, 2017.  ECF No. 11-2 at 13.  At the time of his application, Plaintiff was thirty-four years old.  *Id.* at 33.  Plaintiff has a GED.  *Id.* at 33-36.  From 2012 through 2017, Plaintiff held a variety of positions, including as a busser and street sweeper.  *Id.*

Plaintiff alleged his disability began on August 9, 2017.  ECF No. 11-3 at 2.  Plaintiff's claims were based on both physical and mental impairments.  His physical impairments include cervical sprain, thoracic sprain, lumbar sprain, right shoulder sprain, and obesity.  His mental impairments include post-traumatic stress disorder, panic disorder without agoraphobia, intermittent explosive disorder, bipolar disorder, dual role transvestism, and major depressive

3

disorder.[3]  ECF No. 11-2 at 16.  The Commissioner denied Plaintiff's claims initially on April 20,

2018.  *Id.* at 12.  Plaintiff filed for reconsideration on May 21, 2018, and the Commissioner denied

reconsideration on August 23, 2018.  ECF No. 13-1 at 1.  On October 22, 2018, Plaintiff filed a

written request for a hearing, which the ALJ held on November 6, 2019.  ECF No. 11-2 at 13.

### C.  The November 2019 Administrative Hearing

At the hearing, the ALJ heard testimony from Plaintiff and a VE.  Plaintiff testified as to

his physical and mental impairments.  With respect to his mental impairments, Plaintiff described

episodes of explosive anger and multiple suicide attempts.  *Id.* at 44-46.  He explained that he has

been receiving treatment for his mental health since 2015.  *Id.* at 37-39.  Even so, Plaintiff noted

that he still has suicidal thoughts and sees a therapist once a week and a psychiatrist once or twice

a month.  *Id.* at 46.  Plaintiff testified that the medication he takes for depression helps him go to

sleep, but that it is otherwise ineffective.  *Id.* at 42.  Additionally, Plaintiff described that he

experiences racing thoughts that affect his memory and concentration.  *Id.* at 44.

As to his physical ailments, Plaintiff testified that he experiences burning sensations in his

lower back that extend to his legs.  *Id.* at 51-53.  Plaintiff testified that he can only stand for two

hours before getting a sharp pain in his foot, and that he can sit for two hours before needing to

change positions.  *Id.* at 59.  Plaintiff noted that he can walk "a couple of blocks" and lift

approximately fifteen pounds.  *Id.*

The ALJ then heard from the VE.  *Id.* at 60.  The ALJ asked the VE a series of hypothetical

questions about an individual of the same age, education, and work experience as Plaintiff.  *Id.* at

---

[3]     Plaintiff was also diagnosed with hypertension and hypothyroidism, but the ALJ noted that
Plaintiff was able to control these conditions with medication throughout the relevant period.  ECF
No. 11-2 at 15.  Thus, the ALJ found that there was no evidence of any limitations associated with
either condition that would result in "more than minimal limitations on the claimant's ability to
perform basic work activities."  *Id.*

61.  The ALJ asked the VE if the hypothetical individual with the RFC the ALJ formulated could perform Plaintiff's past relevant jobs.  *Id.*  The VE testified that the individual could not perform any of the Plaintiff's past jobs.  *Id.*  The ALJ then asked if there were jobs in the national economy that the hypothetical individual could perform.  *Id.* at 62.  The VE found that there were light, unskilled jobs that an individual with the proposed RFC could perform.  *Id.*

**D.  The ALJ's Decision**

The ALJ issued her decision on December 2, 2019, finding that Plaintiff was not disabled. *Id.* at 14.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2017.  *Id.* at 15.  At step two, the ALJ found that Plaintiff had the following severe impairments: (1) post-traumatic stress disorder; (2) panic disorder without agoraphobia; (3) intermittent explosive disorder; (4) bipolar disorder; (5) dual role transvestism; (6) major depressive disorder; (7) cervical sprain; (8) thoracic sprain; (9) lumbar sprain; (10) right shoulder sprain; and (11) obesity.  *Id.* at 16.  The ALJ noted that Plaintiff had also been diagnosed with hypertension and hypothyroidism, but Plaintiff could control those impairments through medication.  *Id.*

At step three, the ALJ found that Plaintiff's mental and physical health impairments did not meet or medically equal the severity of any of the impairments in the Listings.  *Id.*  Specifically, the ALJ considered Listings 1.02,[4] 1.04,[5] 12.04, 12.06, 12.08, and 12.15.[6]  *Id.*  The ALJ first found

---

[4]     Under Listing 1.02 (Major Dysfunctions of a Joint), the ALJ evaluated whether Plaintiff provided sufficient evidence of impairment of a major peripheral weight-bearing joint (Subpart A) or a major peripheral joint in each upper extremity (Subpart B).  20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.02.

[5]     Under Listing 1.04 (Disorders of the Spine), the ALJ evaluated whether Plaintiff provided sufficient evidence of nerve root compression (Subpart A), spinal arachnoiditis (Subpart B), or lumbar spinal stenosis (Subpart C).  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (now codified under Listings 1.15 and 1.16).

[6]     Listing 12.04 includes "depressive, bipolar and related disorders."  20 C.F.R. Pt. 404, Subpt. P., App. 1, Pt. A-2 (2017).  Listing 12.06 includes "anxiety and obsessive-compulsive

that Plaintiff's physical impairments did not meet Listings 1.02 and 1.04 because Plaintiff's upper

extremity impairment only affected his right shoulder, and there was no evidence of nerve root or

spinal cord impingement. *Id.* The ALJ then found that Plaintiff's mental impairments did not

satisfy the "paragraph B" criteria of Listings 12.04, 12.06, 12.08, and 12.15 because Plaintiff had

only moderate limitations in the four areas of mental functioning. *Id.* at 16-17. As to "paragraph

C" under the relevant Listings, the ALJ determined that Plaintiff's mental impairments did not

qualify as "serious and persistent," because it requires a medically-documented history of the

existence of the disorder over a period of at least two years. *Id.* at 17.[7]

At step four, the ALJ determined that Plaintiff had the RFC to perform light work with the

following limitations:

> [Plaintiff] can never climb ladders, ropes, or scaffolding. The claimant can
> occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [He]
> can occasionally reach overhead with the right upper extremity. [He] can
> frequently finger and handle objects with the right upper extremity. The claimant
> must avoid concentrated exposure to temperature extremes and all exposure to
> unprotected heights and dangerous moving machinery. The claimant can
> understand, remember, and carry out unskilled simple, routine, and repetitive tasks
> that are not fast-paced or do not have high production quotas. [He] can never
> interact with the general public. [He] can occasionally interact with supervisors
> and coworkers, but the interaction cannot be close. The claimant can work in
> proximity to others, but not on joint or shared tasks.

*Id.* at 17-18. At step five, considering Plaintiff's age, education, work experience, and RFC, the

ALJ determined that there were a significant number of jobs in the national economy that Plaintiff

could perform. *Id.* at 22.[8]

---

disorders." *Id.* Listing 12.08 includes "personality and impulse-control disorders." *Id.* Listing
12.15 includes "trauma-and stressor-related disorders." *Id.*

[7] *See* discussion *infra* pp. 12-17.

[8] When assessing Plaintiff's RFC in conjunction with steps four and five, the ALJ considered
"all symptoms and the extent to which these symptoms can reasonably be accepted as consistent
with the objective medical evidence and other evidence." ECF No. 11-2 at 18. The ALJ also
reviewed opinion evidence as to Plaintiff's physical impairments from the following: Drs.

6

Plaintiff appealed the ALJ's decision.  The Appeals Council denied that appeal on June 26, 2020.  *Id.* at 2-4.

## LEGAL STANDARD

A federal district court has jurisdiction over a challenge to the final decision of the Commissioner.  42 U.S.C. § 405(g).  A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards.  *Id.*; *Butler*, 353 F.3d at 999; *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  This standard "'requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence.'"  *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)).  Ultimately, substantial evidence is a "low bar," *Louisiana Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021) and "requires considerable deference to the decision rendered by the ALJ."  *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995).

On review, a court may not reweigh the evidence.  *Butler*, 353 F.3d at 999.  Instead, it is the court's role to "carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts."  *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009).  In performing this role, the court must ". . . be mindful of the harmless-error rule.

---

Veronica Bedeau, Jacqueline McMorris, and Ikechi Nnawuchi, Plaintiff's treating physician.  *Id.* at 18-21.  The ALJ reviewed opinion evidence as to Plaintiff's mental impairments from the following: Nancy Hesier, Ph.D., Patricia Cott, Ph.D., and Ikechi Nnawuchi, M.D.  *Id.* at 18-20.  The ALJ did not give specific evidentiary weight to any prior administrative medical finding or opinion and did not find the opinion of Dr. Nnawuchi persuasive.  *Id.* at 19-20.

Consequently, even if [the court] perceive[s] error," it must "affirm the Commissioner's decision unless the error is prejudicial." *Saunders v. Kijakazi*, 6 F.4th 1, 5 (D.C. Cir. 2021) (internal citation omitted).

"'[P]laintiff bears the burden of demonstrating that the Commissioner's decision [is] not based on substantial evidence or that incorrect legal standards were applied.'" *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quotation omitted).

## DISCUSSION

Plaintiff advances four arguments in favor of reversing the ALJ's decision: (1) the ALJ failed to afford controlling weight to Plaintiff's treating psychiatrist; (2) the ALJ was incorrect when she found that Plaintiff's mental impairments did not meet the Listings; (3) the RFC which the ALJ formulated failed to address all of Plaintiff's mental and physical limitations; and, (4) the Commissioner failed to demonstrate that there are jobs in the national economy that Plaintiff can perform despite his physical and mental limitations.

### I.     The ALJ was Not Required to Give Controlling Weight to the Opinion of Plaintiff's Treating Psychiatrist.

Plaintiff first argues that the ALJ failed to give proper weight to the opinion of Plaintiff's treating psychiatrist Dr. Ikechi Nnawuchi.  ECF No. 13-1 at 12.[9]  Plaintiff claims that the ALJ

---

[9]    Plaintiff also claims that the Commissioner failed to respond to his argument that the ALJ should have given controlling weight to Dr. Nnawuchi, and therefore, the Court should consider this argument conceded.  ECF No. 17 at 4.  This is incorrect.  Far from conceding Plaintiff's argument, the Commissioner responded directly to Plaintiff's assertions.  *See* ECF No. 15 at 13 ("The revised regulations have eliminated deference to the claimant's treating doctor and explain that ALJs will not assign specific evidentiary weight to any medical opinion.").  In any event, it is within the Court's discretion whether to treat an argument as conceded, and given the applicable SSA regulations directly on point, the Court declines to do so here.  *See Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) ("[Local Rule 7(b)] is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court *may* treat the unaddressed arguments as conceded.") (emphasis added).

failed to follow the relevant regulations and impermissibly disregarded Dr. Nnawichi's findings that Plaintiff had marked limitations in mental functioning.  ECF No. 17 at 4; 20 C.F.R. § 404.1520c (outlining how the SSA weighs medical opinions and findings).  The Commissioner contends that the Agency's regulations, as revised, eliminate deference to treating physicians and mandate that an ALJ is not required to assign specific evidentiary weight to any particular medical opinion.  ECF No. 15 at 11; 20 C.F.R. §§ 404.1520c, 416.920c (regulations governing claims filed on or after March 27, 2017).  According to the Commissioner, the ALJ appropriately considered and rejected Dr. Nnawuchi's findings.  *Id.* at 13-17.  The Court agrees with the Commissioner.

Prior to 2017, SSA regulations required ALJs to give "controlling weight" to treating physicians' opinions as long as they were consistent with the record.  20 C.F.R. § 404.1527(d)(2); *Butler*, 353 F.3d at 1003 (explaining the "treating physician rule").  This is not the case, however, for claims filed after March 27, 2017.  Under the revised regulations, 20 C.F.R. Sections 404.1520c and 416.920c, an ALJ shall not give specific evidentiary weight to any medical opinion, "including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).[10]  Instead, the ALJ must decide how persuasive she finds all medical opinions according to five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion."  *Id.* § 404.1520c(b)-(c).  When evaluating the persuasiveness of a particular medical opinion, the most important factors for an ALJ to consider are supportability and consistency.  *See id.* § 404.1520c(b)(2).

---

[10]     Under the new regulations, even if an ALJ finds a medical opinion persuasive, the ALJ is not obligated to accept every part of the opinion.  *See, e.g.*, *Massicotte v. Comm'r of Soc. Sec.*, No. 20-cv-2923, 2022 WL 2663406, at *5 (M.D. Fla. July 11, 2022) ("[T]he ALJ need not adopt every part of an opinion he or she finds persuasive."); *McClure v. Saul*, No. 20-cv-150, 2021 WL 3856577, at *7 (E.D. Mo. Aug. 30, 2021) (similar).  The ALJ, however, must "provid[e] a sufficient basis for this Court to understand his reasoning when viewing the decision as a whole." *Colter v. Kijakazi*, No. 20-cv-632, 2022 WL 715218, at *11 (D.D.C. Mar. 10, 2022).

Plaintiff's argument that the "independent treating physician rule . . . still applies despite Social Security's revised regulations" is incorrect.  ECF No. 17 at 4.  Because Plaintiff filed his claims on September 6, 2017, after the new regulations took effect, the treating physician rule is not applicable.  *See* 20 C.F.R. § 404.1520c(a); *see also Harner v. SSA*, 38 F.4th 892, 898 (11th Cir. 2022) (holding that the revised regulation supersedes the previous judicial interpretation of the older rule); *De Deaux v. Kijakazi*, No. 21-CV-682, 2022 WL 14760678, at *3-4 (D.D.C. Oct. 25, 2022) (applying revised regulations where a claimant filed a claim after March 27, 2017). Therefore, the Court's inquiry turns on whether the ALJ appropriately considered the opinion of Dr. Nnawuchi under the new regulations.

Dr. Nnawuchi's findings, memorialized in a September 2019 mental capacity check sheet, reflected that Plaintiff had marked or extreme limitations in almost all of his mental capabilities. ECF No. 11-11 at 116-19.  In her decision, the ALJ determined that these findings were only partially consistent with the record for four reasons.  ECF No. 11-2 at 20-21.  First, the ALJ reasoned that Dr. Nnawuchi did not provide support for his findings on the mental capacity check sheet.  *Id.*  Second, the ALJ noted that the treatment record contradicted Dr. Nnawuchi's findings as the record reflected that Plaintiff's mental status exams "were generally fair and without significant problems noted."  *Id.* at 20.  Third, Dr. Nnawuchi failed to address Plaintiff's noncompliance with his medication and its effect on Plaintiff's mental functioning.  *Id.* Specifically, the ALJ noted that "Dr. Nnawuchi does not acknowledge that the claimant consistently reported that [his] mental impairments worsened off [his] medication."  *Id.*  Fourth, the ALJ discounted Dr. Nnawuchi's findings because "there is no evidence [Dr. Nnawuchi] is familiar with the Social Security disability assessment."  *Id.*

At the same time, the ALJ discussed why she found the opinions of the state agency medical consultants, Nancy Heiser, Ph.D., and Patricia Cott, Ph.D., persuasive. *Id.* Both Dr. Heiser and Dr. Cott found that Plaintiff had moderate restrictions in functioning and could perform simple instructions and tasks that do not require extensive interaction with the public. *Id.* The ALJ reasoned that their opinions reflected the findings in Plaintiff's mental health treatment notes. *Id.* The ALJ also included additional restrictions, beyond those determined by the medical consultants, based on Plaintiff's hearing testimony. *Id.*

Thus, the ALJ appropriately evaluated the medical opinions at issue and sufficiently explained the weight she afforded to each. *See* 20 C.F.R. § 404.1520c(a). The ALJ adequately articulated her rationale for weighing certain reports more heavily than others. ECF No. 11-2 at 20. As such, there is substantial evidence in the record to support the ALJ's findings as to Plaintiff's limitations. *See* ECF No. 15 at 14-15 (citing to Plaintiff's treatment notes whereby Plaintiff appeared well groomed, neat, and clean, with a cooperative attitude, normal speech, logical/coherent thought process, intact associations, appropriate thought content, and fair insight and judgment, among other things). Despite Plaintiff's arguments, the Court "cannot . . . reweigh the evidence and replace the [ALJ's] judgment regarding the weight of the evidence with its own." *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 36 (D.D.C. 2014) (quoting *Brown v. Barnhart*, 370 F. Supp. 2d 286, 288 (D.D.C. 2005)); *see also Thigpen v. Colvin*, 208 F. Supp. 3d 129, 138 (D.D.C. 2016) ("the undersigned, in keeping with the applicable standard in this Circuit, 'is highly deferential to the agency fact-finder,' here, the ALJ.") (quoting *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015)).

II.     **The ALJ Erred in Her Assessment of Plaintiff's Claims Under Listings 12.04, 12.06, 12.08, and 12.15.**

Step three of the sequential analysis requires an ALJ to determine whether a claimant's alleged disability meets or is medically equivalent to an impairment in the Listings.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is presumptively disabled.  *Id.*  Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairments did not meet either "paragraph B" or "paragraph C" of the Listings, specifically Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma and stressor-related disorders).  *See* ECF No. 13-1 at 25, 32.  The Commissioner responds that there is substantial evidence to support the ALJ's findings that Plaintiff's mental impairments did not meet the Listings in paragraph B or paragraph C.  ECF No. 15 at 26.  The Court agrees with Plaintiff as to the ALJ's analysis of the paragraph C criteria.

A.     *There is Substantial Evidence to Support the ALJ's Conclusion That Plaintiff Did Not Meet the "Paragraph B" Criteria of the Listings.*

Under the Listings for mental health impairments, "paragraph B" of mental disorders outlines four functional criteria, also known as areas of mental functioning, used to assess mental disorders.  20 C.F.R. pt. 404, subpt. P., app. 1 §§ 12.04, 12.06, 12.08, 12.15.  The criteria are "understand, remember, or apply information"; "interact with others"; "concentrate, persist, or maintain pace"; and "adapt or manage oneself."  *Id.*  To satisfy the paragraph B criteria, the mental disorders must cause "extreme" limitation of one, or "marked" limitation of two of the areas of mental functioning.  *Id.*

The criteria for the Listings in step three "are more restrictive than the statutory disability standard," as the plaintiff must establish that her impairments are "severe enough to prevent a person from doing *any* gainful activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis added).  In reviewing the ALJ's decision at step three, a "Court is

not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety." *Gibson v. Kijakazi*, No. 1:21-CV-660-ZMF, 2022 WL 17172189, at *4 (D.D.C. Nov. 23, 2022) (citing *Al Hulais v. Comm'r. of Soc. Sec. Admin.*, No. 18-cv-118, 2018 WL 6704756, at *6 (D. Md. Dec. 20, 2018)).  Though "the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)).  The ALJ must indicate not only "'what evidence was credited, but also whether other evidence was rejected,' rather than simply ignored." *Gibson*, 2022 WL 17172189, at *6 (quoting *Brown v. Bowen*, 794 F.2d 703, 708 (D.C. Cir. 1986)).

Plaintiff argues that the ALJ erred in finding that he had only moderate limitations in mental functioning.  ECF No. 13-1 at 25.  The Commissioner responds that the ALJ's conclusion should not be disturbed because it was supported by substantial evidence.  ECF No. 15 at 26.  The Court agrees with the Commissioner.

The ALJ made a number of relevant findings on this issue.  First, the ALJ found that the Plaintiff had a moderate limitation in his ability to "understand, remember, or apply information" because the mental status exams throughout the record demonstrated that Plaintiff's memory was fair and intact.  ECF 11-2 at 16.  The ALJ noted that Plaintiff exhibited poor to fair insight and judgment.  *Id.*  Second, as to Plaintiff's ability to "interact with others," the ALJ found that the Plaintiff had a moderate limitation because the Plaintiff exhibited a "constricted affect with anxious mood" during some mental status examinations.  *Id*. at 17.  As to Plaintiff's ability to "concentrate, persist, or maintain pace," the ALJ found that the Plaintiff had a moderate limitation because the Plaintiff was "engaged and cooperative" with a fair attention span and concentration

during therapy and mediation appointments.  *Id.*  Finally, as to Plaintiff's ability to "adapt or manage oneself," the ALJ found that the Plaintiff had a moderate limitation because the Plaintiff exhibited "hyperactive psychomotor activity."  *Id.*  The ALJ also referred to the Plaintiff's psychiatrist's notes indicating his inconsistent therapy attendance.  *Id.*  The ALJ explained that her conclusion that the Plaintiff has moderate limitations in the four areas of mental functioning was based on Plaintiff's treatment records.  ECF No. 11-2 at 16-17.  The ALJ also relied upon the findings of the state agency psychological consultants, Drs. Heiser and Cott, who both determined that Plaintiff did not meet a Listing.  *Id.* at 16.  As noted above, this is supported by the record, as Plaintiff was routinely observed to have a cooperative attitude, normal speech, logical/coherent thought process, intact orientation, fair memory, fair attention span and concentration, and fair language.  *See* ECF No. 15 at 25.  Thus, there is substantial evidence to support the ALJ's conclusion that Plaintiff had only moderate limitations in the four areas of mental functioning.

B.       *The ALJ's Conclusion That Plaintiff Did Not Meet the "Paragraph C" Criteria of the Listings is Not Supported by Substantial Evidence.*

"Paragraph C" of the Listings refers to the criteria used to evaluate the "serious[ness] and persisten[ce]" of certain mental disorders.  20 C.F.R. pt. 404, subpt. P., app. 1 §§ 12.04, 12.06, 12.15.  To satisfy paragraph C, a claimant must show: that the disorder in the listing category is serious; that it persisted over a period of at least two years; that it was treated during that period; and that, due to the disorder, the claimant has a "minimal capacity to adapt to changes" in his environment or new demands that are not already part of his daily life.  *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.04, 12.06, 12.15.

Plaintiff argues that the ALJ erred at step three by ignoring evidence in the record that reflected that Plaintiff's mental impairments were serious and persistent.  ECF No. 13-1 at 32.  The

Commissioner responds that the ALJ's conclusion is supported by substantial evidence.  ECF No.

15 at 26.  The Court agrees with Plaintiff.

The ALJ's discussion of the paragraph C criteria under listings 12.04, 12.06, 12.08, and

12.15 is perfunctory at best:

> In this case, the evidence fails to establish the presence of the "paragraph C"
> criteria.  The claimant's mental impairments have not required at least two years of
> medical treatment or other structured setting to diminish the symptoms of the
> mental disorder with only minimal capacity to adapt to changes.

ECF No. 11-2 at 17.

The ALJ's discussion of paragraph C is devoid of analysis and precludes meaningful

review.  *See Lane-Rauth*, 437 F. Supp. 2d at 67 ("[Although] the ALJ need not articulate his

reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's

evidence that contradicts the Commissioner's position.").  As Plaintiff notes, the ALJ ignored

substantial evidence in the record that Plaintiff had a serious and persistent disorder for which he

sought treatment for more than two years.  ECF No. 13-1 at 33-34; ECF No. 17 at 15-16.

Specifically, Dr. Nnawuchi, Plaintiff's treating psychiatrist, began treating Plaintiff in November

2015.  ECF No. 11-9 at 104-105.  Although this fact contradicts the ALJ's assertion that Plaintiff's

mental impairments "have not required at least two years of medical treatment," she failed to

address this record evidence.  ECF No. 11-2 at 17.  Further, the medical record reflects that

Plaintiff's psychiatric symptoms presented when Plaintiff was eleven years old during a

hospitalization for suicidal ideations.  ECF No. 13-1 at 34.  In addition, Plaintiff testified that he

has been receiving mental health treatment since 2012.  ECF No. 11-2 at 55 ("So I've been actually

getting mental health treatment since I've been home, since 2012.").

The Commissioner does not address the ALJ's failure to comprehensively consider this

record evidence.  Instead, the Commissioner offers a series of *post hoc* rationalizations, effectively

assuming the role of the ALJ.  ECF No. 15 at 25-26.  These rationales are insufficient to explain the ALJ's decision.  *See Cooper v. Berryhill*, No. 16-1671 DAR, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017) (prohibiting the Commissioner from offering "post-hoc rationalization[s]" to support the ALJ's decision).  The ALJ failed to engage with or acknowledge the pertinent evidence in any meaningful way.  Nor did she provide even "a breath of explanation" as to why she rejected the record evidence on this point.  *See Brown*, 794 F.2d at 708 ("The judiciary can scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored."); *see also Gibson v. Kijakazi*, No. 1:21-CV-660-ZMF, 2022 WL 17172189, at *6-7 (D.D.C. Nov. 23, 2022 (finding that, although an ALJ need not spell out every aspect of a Listing, his discussion of the evidence must not be superficial).

Because the ALJ's error on this issue precludes meaningful judicial review, remand is required.  *See Ademakinwa v. Astrue*, 696 F. Supp. 2d 107, 111 (D.D.C. 2010) (citation omitted) (finding remand appropriate where the court cannot discern "the ALJ's rationale . . . without further findings or clearer explanation for the decision."); *Wells v. Astrue*, No. 02–1357, 2009 WL 2338047, at *7 n.5 (D.D.C. July 30, 2009) ("When the evidence in the administrative record clearly generates an issue as to a particular listing and the ALJ fails to . . . explain clearly the medical evidence of record supporting the conclusion reached[,] a remand can be expected to result.").

### III.   The ALJ Erred in Determining that Plaintiff's Subjective Complaints Were Only Partially Consistent With the Entire Record.

Plaintiff claims that the ALJ ignored his subjective statements about his pain and the limiting effects of his physical and mental conditions.  ECF No. 13-1 at 34-35, 41.  Specifically, Plaintiff argues that the ALJ misstated the record and placed undue weight on Plaintiff's occasional noncompliance with medication and treatment.  *Id.* at 21-25.  The Commissioner argues that the

ALJ's conclusion that Plaintiff's subjective statements were only partially consistent with the record was supported by substantial evidence.  ECF. No. 15 at 17-18.  The Commissioner also argues that the ALJ appropriately considered Plaintiff's noncompliance with medication and treatment.  *Id.* at 21-22.  The Court agrees with Plaintiff as to the ALJ's assessment of his subjective mental health complaints.

ALJs are required to follow a two-step process when evaluating the intensity and persistence of a claimant's symptoms to determine the extent to which such symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1).  First, the ALJ must determine whether there are "medically determinable impairment(s) that could reasonably be expected to produce . . . symptoms, such as pain." *Id.*  Second, the ALJ must "evaluate claimant's statements as well as 'all [of] the available evidence,' including 'claimant's medical history, medical signs and laboratory findings; objective medical evidence of pain; the medical opinions of the claimant's treating physician[s]; and any other evidence that bears on the severity of the pain.'" *Troy v. Colvin*, 266 F. Supp. 3d 288, 295 (D.D.C. 2017) (quoting *Butler*, 353 F.3d at 1004).  "While an ALJ may not reject a claimant's statements about pain 'solely because they are not substantiated by objective medical evidence,' the ALJ may consider 'whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence.'" *McCormick v. Saul*, No. 18-cv-1704, 2021 WL 2634732, at *9 (D.D.C. June 25, 2021) (quoting *Butler*, 353 F.3d at 1004-05)).

At step one, the ALJ found that Plaintiff had medically-determinable physical and mental impairments.  ECF No. 11-2 at 18.  At step two, the ALJ determined that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are partially consistent with the entire record." *Id.*

17

In support of this finding as to physical impairments, the ALJ noted Plaintiff's normal x-ray exams, Plaintiff's physical therapy and chiropractic treatment, and overall conservative treatment. *Id.* at 19. The ALJ further noted that "[e]xams showed some restriction in movement; however, the claimant remained capable of ambulating and had full use of all extremities." *Id.* In addition, the ALJ relied upon the state agency consultants, Dr. Veronica Bedeau and Dr. Jacqueline McMorris, whose opinions the ALJ found persuasive. *Id.* Both consultants determined that Plaintiff was capable of light work based on a review of the medical record. *Id.* at 20. The ALJ did not rely solely on the findings of the consultative examiners, as she added "additional restrictions in functioning . . . based on new evidence and the claimant's testimony." *Id.* Last, the ALJ considered "the aggravating effect of the claimant's obesity on [his] musculoskeletal impairments" and Plaintiff's body mass index. *Id.* The ALJ concluded that Plaintiff's physical impairments were not as limiting as Plaintiff alleged. *Id.*

Regarding Plaintiff's mental impairments, the ALJ based her opinion on the following:

> The claimant's mental impairments caused restrictions in [his] mental functioning. But the claimant's failure to regularly follow-up for treatment or take [his] medications as prescribed suggest that [his] symptoms were not as limiting as [he] alleges. Further, the claimant reported improvement in symptoms when [he] was taking [his] medications. It is reasonable to assume that if the claimant's symptoms were as severe as alleged and [his] medications were successful in addressing these symptoms, the claimant would have regularly attended [his] medication management sessions and taken [his] medication as prescribed. There is no evidence of financial restrictions, side effects, or other issues that prevented the claimant from continuing treatment.

*Id.* at 18.

### A. *The ALJ Properly Considered Plaintiff's Subjective Complaints as to Plaintiff's Physical Impairments.*

There is substantial evidence to support the ALJ's finding that Plaintiff's physical complaints were only partially consistent with the record. *See Callaway v. Berryhill*, 292 F. Supp.

289, 297-98 (D.D.C. 2018) (finding that the ALJ did not improperly reject subjective complaints based on a lack of objective evidence where the ALJ considered the plaintiff's statements, the objective medical evidence, the opinion evidence, and the plaintiff's hearing testimony).  The ALJ relied upon and was persuaded by objective findings in the record, including treatment records and imaging studies demonstrating that Plaintiff "remained capable of ambulating and had full use of all extremities."  ECF No. 11-2 at 19.  Moreover, the ALJ relied upon the opinions of the state agency medical consultants.  *Id.* at 20.  A review of the record confirms the ALJ's findings.  *See e.g.*, ECF No. 11-7 at 3 ("Pt appears to have symptoms consistent with low risk back pain); *id.* at 18 (normal imaging findings).  The ALJ also included additional physical limitations when formulating Plaintiff's RFC based on more recent evidence and Plaintiff's hearing testimony.  ECF No. 11-2 at 20.

B.     *The ALJ Improperly Considered Plaintiff's Subjective Complaints
        as to Plaintiff's Mental Impairments.*

In challenging the ALJ's analysis of Plaintiff's subjective complaints as to his mental limitations, Plaintiff argues that the ALJ erred in placing undue weight on Plaintiff's noncompliance with treatment and failed to explore the reasons for his noncompliance.  ECF No. 13-1 at 21-22.  Specifically, Plaintiff claims that the ALJ "egregiously misstated the dates and frequency of [Plaintiff's] mental health treatment to support her conclusion that [Plaintiff] was non-compliant" and then "drew unsupportable speculative conclusions from her distorted view of the factual record."  *Id.* at 21.  The Commissioner responds that the ALJ did not rely solely on Plaintiff's treatment noncompliance as a basis for discrediting Plaintiff's subjective complaints and that substantial evidence supports the ALJ's decision.  ECF No. 15 at 21.  The Court agrees with Plaintiff.

In finding Plaintiff's subjective complaints only partially consistent with the record, the ALJ relied substantially on Plaintiff's noncompliance with treatment.  ECF No. 11-2 at 19 ("[I]f the claimant's symptoms were as severe as alleged and [his] medications were successful in addressing these symptoms, the claimant would have regularly attended [his] medication management sessions and taken [his] medication as prescribed.").  Specifically, the ALJ stated that "[t]he claimant was seen in July and August 2017 by Ikechi Nnawuchi, M.D. for medication management.  [. . .]  He did not appear again until January 2018.  The claimant had not been taking [his] medications.  [. . .]  After February 2018, the claimant was not seen again until August 2019." *Id.* at 18.

An ALJ may rely on an individual's "fail[ure] to follow prescribed treatment that might improve symptoms" to "find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."  Titles II and XVI: Evaluations of Symptoms in Disability Claims, SSR 16-3p [hereinafter SSR 16-3p], 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017); *see also Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."); *Washington v. Saul*, No. 20-cv-662, 2021 WL 2514691, at *8 (D.D.C. June 18, 2021) (relying on plaintiff's noncompliance with treatment to support the determination that the plaintiff's subjective complaints were not consistent with other record evidence).  Even so, the ALJ must "review the case record to determine whether there are explanations" for a claimant's failure or inability to comply with treatment.  SSR 16-3p at *10.  Importantly, SSA regulations dictate that an ALJ must interrogate whether any purported noncompliance with mental health

treatment is itself a symptom of a claimant's ailments.  20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00(G)(2)(b).[11]

The ALJ erred in two ways.  First, the ALJ misstated the record as to Plaintiff's noncompliance with treatment.  ECF No. 13-1 at 22.  The record reflects that Plaintiff appeared for appointments with Dr. Nnawuchi on August 25, 2017, January 29, 2018, February 23, 2018, and July 8, 2019, as well as psychiatric counseling with licensed clinical social workers throughout the period in which the ALJ determined that Plaintiff "show[ed] significant issues with treatment compliance."  ECF No. 11-9 at 2-27; ECF No. 11-10 at 110-140.  In fact, Plaintiff appeared for appointments with clinical social workers on four separate occasions during this time.  ECF No. 11-11 at 89-91, 92-96, 97-101, 102-109.  The Commissioner attempts to mitigate the ALJ's error by suggesting that the ALJ was only referring to Plaintiff's failure to attend medication management appointments with Dr. Nnawuchi.  ECF No. 15 at 21.  But the language of the ALJ's decision is broader.  ECF No. 11-2 at 18 (citing "significant issues with treatment compliance since the alleged onset date.").  This error warrants remand, as the ALJ largely relied upon Plaintiff's purported noncompliance in discrediting Plaintiff's subjective complaints.  *See* ECF No. 11-2 at 19 ("The claimant's mental impairments caused restrictions in [his] mental functioning.  But the claimant's failure to regularly follow-up for treatment or take [his] medications as prescribed suggest that [his] symptoms were not as limiting as she alleges.").

---

[11]     20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00(G)(2)(b) provides:

We will consider periods of inconsistent treatment or lack of compliance with treatment that may result from your mental disorder.  If the evidence indicates that the inconsistent treatment or lack of compliance is a feature of your mental disorder, and it has led to an exacerbation of your symptoms and signs, we will not use it as evidence to support a finding that you have not received ongoing medical treatment as required by this paragraph.

Second, the ALJ failed to adequately consider the reasons underlying Plaintiff's noncompliance with treatment.  Although the record reflects that Plaintiff failed to take prescribed medication at various points and failed to appear for medication management appointments between March 2018 and June 2019, the ALJ's decision only nominally references how Plaintiff's underlying condition contributed to noncompliance with treatment:

> If the claimant's symptoms were as severe as alleged and [his] medications were successful in addressing these symptoms, the claimant would have regularly attended [his] medication management sessions and taken [his] medication as prescribed.  There is no evidence of financial restrictions, side effects, or other issues that prevented the claimant from continuing treatment.

*Id.*

The ALJ failed to conduct any meaningful inquiry into Plaintiff's alleged noncompliance and how such an inability to follow the treatment prescribed could be a symptom of his mental impairments.[12]  Given the ALJ's failure to raise Plaintiff's noncompliance at the hearing, the ALJ's statement that there is no evidence of "financial restrictions, side effects or other issues that prevented the claimant from continuing treatment" is conclusory and not supported by the record.  Indeed, the record contains examples that Plaintiff's treatment noncompliance is itself a symptom of his ailments.  *See, e.g.*, ECF No. 11-11 at 81.  On balance, by misstating the record and failing

---

[12]     Plaintiff argues that the ALJ was "required to make an extensive inquiry into the circumstances surrounding Mr. Odom's purported noncompliance."  ECF No. 13-1 at 23 (citing *Jackson v. Barnhart*, 271 F. Supp. 2d 30, 38 (D.D.C. 2002)).  This is incorrect.  As the Commissioner correctly notes, such extensive inquiry is only required where an ALJ relies exclusively on noncompliance with prescribed treatment as the basis for the denial of benefits.  *See Darlene M. v. Kijakazi*, No. 20-cv-1817 (RDM/GMH), 2021 WL 6841641, at *22 (D.D.C. Sept. 3, 2021); *see also* 20 C.F.R. § 404.1530; Titles II and XVI: Failure to Follow Prescribed Treatment, SSR 82-59, 1982 WL 31384, at *1 (S.S.A. 1982).  That is not the case here, as the ALJ did not find Plaintiff disabled *but for* failure to follow prescribed treatment.  Yet, in this case where the evidence reflects that Plaintiff's noncompliance was linked to a limitation in Plaintiff's functioning, the ALJ retains an obligation to determine whether there were explanations for Plaintiff's failure to abide by prescribed treatment.  *Darlene M.*, 2021 WL 6841641, at *23.

to inquire into whether Plaintiff's mental impairments contributed to his noncompliance with treatment, the ALJ's evaluation of Plaintiff's subjective complaints falls short.  The ALJ must consider the record evidence regarding Plaintiff's noncompliance with his mental health treatment and, if required, reassess Plaintiff's RFC accordingly.

### IV.    The ALJ Did Not Err in Finding That Plaintiff Was Not Disabled at Step Five of the Sequential Evaluation Process.

At step five in the sequential analysis, the burden is on the Commissioner to show that jobs exist in the national economy that Plaintiff can perform provided certain limitations.  Under step five, an ALJ must take notice of "reliable job information" available from various publications, including the Dictionary of Occupational Titles ("DOT").  20 C.F.R. §§ 404.1566(d), 416.966(d).  In addition, as provided in 20 CFR §§ 404.1566(e) and 416.966(e), "[ALJs] use VEs and VSs [vocational specialists] as sources of occupational evidence in certain cases."  SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (quoting 20 C.F.R. §§ 404.1566(e), 416.966(e)) [hereinafter SSR 00-4p].  If there is a conflict between the DOT and the VE, the ALJ must, "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT)."  SSR 00-4p.

At the hearing, the VE testified that a person with Plaintiff's vocational background and RFC could perform light unskilled jobs such as inspector and sorter (DOT # 529.687-114; 118,000 national positions), stock clerk and order filler (DOT # 209.587-034; 248,000 national positions), and general production worker (DOT # 222.687-014; 195,000 national positions).  ECF No. 11-2 at 62.  The VE testified that all three jobs had a Specific Vocational Preparation (SVP) of 2.  *Id.*[13]

---

[13]    Specific vocational preparation is used within the DOT to define the time generally required to learn certain skills for particular jobs.  "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9[.]"  SSR 00-4p, at *3.

Moreover, the VE stated her testimony was consistent with the information contained in the DOT. *Id.* at 63.

Plaintiff argues there is an unresolved conflict between the VE's testimony identifying unskilled jobs and their corresponding DOT definitions which categorize each position as having a General Educational Development (GED) reasoning level of 2.  ECF No. 13-1 at 42-43. Specifically, Plaintiff claims that the ALJ should have identified jobs with a GED reasoning level of 1 to align with the ALJ's RFC limiting Plaintiff to "unskilled simple, routine, and repetitive tasks."  *Id.* at 43.  The Commissioner argues that there is no conflict between the VE's testimony and DOT reasoning levels because the jobs identified by the VE correlate to Plaintiff's mental limitations.  ECF No. 15 at 30-32.

Contrary to Plaintiff's argument that "limitation to simple, routine tasks precludes performance of a job at GED reasoning level of two," the VE proffered jobs that were consistent with Plaintiff's mental limitations.  *See, e.g.*, *Lawrence v. Saul*, 941 F.3d 140, 142-44 (4th Cir. 2019) (holding no conflict between the DOT's Level 2 reasoning and an RFC for "simple, routine, repetitive tasks of unskilled work"); *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (holding no conflict between jobs with a DOT reasoning Level 2 and an RFC limiting plaintiff to "carrying out simple job instructions").  Here, the ALJ's RFC reflected that Plaintiff could only "carry out unskilled, simple, routine, and repetitive tasks."  ECF No. 11-2 at 18.  Therefore, there is no conflict between the DOT and the VE's testimony.  *See Broyles v. Astrue*, 910 F. Supp. 2d 55, 63 (D.D.C. 2012) (holding that three positions with an SVP of 2 were considered unskilled positions and consistent with the ALJ's findings about the plaintiff's mental limitations).  Thus, the ALJ properly demonstrated that there are a significant number of jobs in the national economy that Plaintiff can perform.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Reversal is **GRANTED** with respect to the ALJ's consideration of paragraph C of the Listings and the ALJ's treatment of Plaintiff's subjective mental health complaints.  These issues are **REMANDED** to the Social Security Administration for further proceedings consistent with this Memorandum Opinion.  Plaintiff's Motion for Reversal is **DENIED** as to all other issues.  For the reasons also stated above, Defendant's Motion for Judgment of Affirmance is **GRANTED IN PART** and **DENIED IN PART**.

Date: August 21, 2023

_____
MOXILA A. UPADHYAYA
United States Magistrate Judge